UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT AMERICAN ASSURANCE COMPANY,

    Plaintiff,

v.                                  Case No. 13-12081

ALEXANDER & ANGELAS, P.C., et al.,

    Defendants.
                                        /

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL**

On May 10, 2013, Plaintiff Great American Assurance Company ("Great American") sued Defendants Alexander & Angelas, P.C. and Peter A. Angelas ("Angelas") for legal malpractice. After two status conferences where this court attempted to resolve the parties discovery disputes, on February 26, 2014, Defendants moved "to compel financial information regarding Plaintiff's sale of non-trucking loss policies in the state of Michigan." (Dkt. # 26.) Specifically, Angelas seeks an order "compelling Great American to produce all documents and information in its possession regarding the number of Non-Trucking Loss policies Great American sold in Michigan for the years 2000-2010 inclusive, and the premium Great American collected for those policies." (Dkt. # 28, Pg. ID 131.) The motion has been fully briefed, and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the court will grant in part and deny in part Defendants' motion to compel.

## I. BACKGROUND

The underlying case in this legal malpractice action arises out of an accident involving three commercial trucks that caused the death of truck driver Jose Mejia-Cabrera on February 9, 2010. At the time of the accident, Great American insured one of the drivers (not Cabrera) of the trucks involved. Great American alleges that, in reliance on Angelas's advice that it was in the highest order of priority to pay no-fault benefits, it paid benefits to Cabrera's estate. It was subsequently determined that Hudson Insurance Company ("Hudson") was the no-fault carrier in the highest order of priority.[1] Great American then brought this legal malpractice suit alleging that Angelas's advice proximately caused Great American damage. Angelas counters that Great American cannot establish that Angelas's advice was a proximate cause of Great American's decision to assume priority.

## II. STANDARD

The Federal Rules of Civil Procedure contemplate broad discovery. Rule 26(b)(1) permits discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[1] In a related action before Judge Murphy, at the summary judgment stage, the court found Hudson to be "the carrier in the highest level of priority and that Great American [was] entitled to recoup benefits paid one year prior to the date it filed the complaint." (Case No. 11-11343, Dkt. # 84, Pg. ID 1294.) It appears that the parties ultimately settled in that case.

Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1)'s broad scope, however, is tempered by Rule 26(b)(2), which grants "district courts . . . discretion to limit the scope of discovery where the information sought is overly broad or would prove burdensome to produce."  *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).  Rule 26(b)(2)(c) further mandates the court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

### III.  DISCUSSION

Angelas principally contends that "[p]art of [his] consideration in exercising attorney judgment in advising Great American as to the order of priority to pay No-Fault benefits was the substantial business interest of Great American in selling Non-Trucking Liability ('NTL') policies in Michigan."  (Dkt. # 28, Pg. ID 127.)  NTL policies contain contractual language that limits their coverage of commercial trucks to times when the trucks are not under dispatch (the "NTL limitation").  According to Angelas, at the time of the accident, Harco Insurance insured Cabrera when his truck was under dispatch and Hudson insured him when his truck was not under dispatch pursuant to an NTL policy.  Angelas argues further that, to have advised Great American that the Hudson policy was in the highest order of priority, he "would have had to take the position that the NTL limitation was unenforceable in Michigan" because Cabrera was under dispatch at the time of the accident.  (Dkt. # 28, Pg. ID 128.)  Great American profits from selling many NTL policies, which presume, of course, that the NTL policies' NTL limitation is

3

enforceable. Therefore, Angelas argues, "if the NTL limitation were unenforceable, the premiums currently charged by Great American would be far too low to cover losses that occur both when trucks are under dispatch and when they are not." (*Id.*) As such, Angelas argues that "pursuing the Hudson NTL policy for coverage would have created bad law for Great American that would have adversely affected a large portion of its business interests in Michigan." (*Id.*) Angleas seeks information regarding the number of NTL policies Great American sold and the premiums collected for NTL coverage in Michigan to bolster its contention that Great American has a business interest in the enforceability of NTL limitations.

Great American wholly disputes Angelas's contention that in providing advice regarding the order of priority to pay benefits, Angelas considered Great American's business interest in NTL policies. Great American argues that a legal opinion should not depend on business interests. Further Great American contends that it has cooperated in allowing widespread discovery to date but that the Angelas's pending request is irrelevant. Specifically, Great American argues:

> Because there is no evidence suggesting that Defendants were asked to consider the business implications in rendering legal advice as to the priority of insurance coverages, and because Great American's prosecution of the Lawsuit inconsistent with Defendants' after-the-fact rationalization that business considerations dictated the decision whether to pay Cabrera no-fault benefits, the discovery sought through this motion is irrelevant.

(Dkt. # 30, Pg. ID 302.)

After considering the motion and the ongoing discovery disputes in this case, the court agrees with Defendants that Plaintiff has not adequately fulfilled its discovery obligations. As part of the court's informal efforts to mediate this discovery dispute, the

court suggested that Great American produce a random draw of twenty Michigan trucking policies to determine what percentage of those policies were NTL policies. Great American, to its credit, agreed, and all twenty polices produced in the random draw were NTL policies and each indicated the premium Great American collected for NTL coverage. Great American's voluntary production of the twenty policies demonstrates its ability to produce the discovery Angelas seeks with relatively little effort. Moreover, that all twenty of the randomly drawn polices were NTL policies demonstrates that although Great American may disagree with Angelas's purported defense, the discovery Angelas seeks "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, the court disapproves of the broad nature and scope of Angelas's request for "all documents and information . . . for the years 2000-2010 inclusive." (Dkt. # 28, Pg. ID 131.) Accordingly, the court will order Plaintiff to produce some, but not all, of the discovery Defendants seek.

## IV. CONCLUSION

IT IS ORDERED that Defendants' motion to compel [Dkt. # 28] is GRANTED IN PART and DENIED IN PART. Plaintiff is DIRECTED to produce by **April 9, 2014**, information in its possession regarding the number of NTL policies Great American sold in Michigan during 2008, 2009, and January and February of 2010, and the premiums Great American collected for such NTL policies.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: March 27, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 27, 2014, by electronic and/or ordinary mail.

                                                       s/Lisa Wagner
                                                     Case Manager and Deputy Clerk
                                                     (313) 234-5522